Filed 12/1/22  P. v. Draughn CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>DAVID DRAUGHN,<br><br>    Defendant and Appellant. | F083252<br><br>(Super. Ct. No. BF183810A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

J. M. Malik, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted David Draughn (appellant) of making criminal threats (Pen. Code, § 422),[1] felony false imprisonment (§ 236), two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and two counts of being a felon in possession of ammunition (§ 30305, subd. (a)(1)). The trial court sentenced appellant to seven years four months in state prison.

On appeal, appellant contends his trial counsel failed to adequately explain that the People may withdraw their two-year plea offer if their witnesses appear at a pretrial "witness management hearing," and as a result he did not accept the offer before it was withdrawn. We conclude that on this record appellant fails to demonstrate he was prejudiced by trial counsel's allegedly deficient performance, and we affirm.

## BACKGROUND

### I.     Factual Background.

M.C. lived at a trailer park in rural Kern County. Appellant did not live there, but he would often come to the park and go from trailer to trailer looking for a place to sleep.

M.C. testified appellant arrived unannounced to her trailer on January 4, 2021, and she allowed him to come inside. He began showing off his newly acquired .45-caliber pistol. She asked appellant not to point the gun at her, and he responded sarcastically that it was not loaded. He then discharged a round into the floor of the trailer approximately two feet from where M.C. was sitting. M.C. ran out of the trailer in fear. Shortly after she exited, she heard another gunshot inside of her trailer.

Appellant returned to M.C.'s trailer on January 10, 2021, around 3:00 a.m. He knocked on the door and asked to be let in because it was freezing outside. M.C. testified she reluctantly allowed appellant to come inside because he was likely to cause a disturbance if she did not allow him in. She explained appellant had caused problems at

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2.

the trailer park in the past, and she was concerned about getting evicted. Once appellant was inside, they slept fully clothed on M.C.'s bed. While in bed, she noticed appellant had his firearm.

The next morning, appellant could not find his wallet and accused M.C. of taking it. M.C. testified appellant became belligerent and told her he was going to shoot her if she did not give him his wallet. He also threatened to shoot her if she left the trailer. M.C. sent a text message to her neighbor, D.A., asking for help. D.A. called the police. When the police arrived, they ordered appellant out of M.C.'s trailer and arrested him. Officers searched M.C.'s trailer and located a loaded, functional .45-caliber pistol.

## II. Procedural Background.

The Kern County District Attorney's Office filed an amended information charging appellant with discharging a firearm in a grossly negligent manner (§ 246.3, subd. (a); count 1), felony false imprisonment (§ 236; count 2), making criminal threats (§ 422; count 3), two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 4 and 6), two counts of being a felon in possession of ammunition (§ 30305, subd. (a)(1); counts 5 and 7), and misdemeanor brandishing of a firearm (§ 417, subd. (a)(2); count 8). The People also alleged appellant suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)) and one prior serious felony conviction (§ 667, subd. (a)(1)).

Appellant was arraigned on March 12, 2021. At the same hearing, he was arraigned on case No. BF184006A, in which he was charged with residential burglary (§§ 459, 460, subd. (a)). He pled not guilty in both cases.

At a May 6, 2021, hearing in front of the Honorable Judith K. Dulcich, appellant was arraigned on a third case, case No. BF185291A, in which he was charged with vehicle theft (Veh. Code, § 10851, subd. (a)) and possession of a stolen vehicle (§ 496d, subd. (a)). The parties then met in chambers to discuss possible resolution of all of

appellant's cases.  Once back on the record, James T. Rogers, appellant's counsel, relayed that the People agreed to resolve all of appellant's cases if appellant pled to a strike offense and accepted a sentence of two years in state prison.  However, appellant was unwilling to accept the offer.  When asked by the court if the People's offer was being rejected, appellant stated:  "Yes.  I would take the counteroffer with 16 months, take a strike.  I'm not willing to take the two years with a strike.  I would take two years without the strike, but I would take 16 months with the strike."  The prosecutor responded there was no need for further negotiation, and the case was continued to May 10, 2021, for jury trial.

Before the May 6, 2021, hearing concluded, the prosecutor requested the case remain on calendar on May 7, 2021, for a "witness management hearing."  The following discussion then occurred on the record:

> "THE COURT:  So we'll trail both cases for witness management. [¶]  Mr. Rogers, would you and your client like to waive your presence for the witness management hearing?
>
> "MR. ROGERS:  You don't have to be there.
>
> "[APPELLANT]:  What is a witness management hearing?
>
> "THE COURT:  They have a witness here that gets ordered back for the next day because the trial is coming back on Monday, the 10th.  Otherwise, you have to get up, come with the crowd, sit here, and see if a witness shows up.
>
> "[APPELLANT]:  Yeah, I don't need to necessarily be here.
>
> "THE COURT:  We'll show you coming back on Monday, May 10th, for jury trial….
>
> "[APPELLANT]:  I have one more question.  This deal, is it still on the table come Monday?
>
> "THE COURT:  On trial day, Mr. [Prosecutor]?

"[APPELLANT]: Give me some time to consider it, talk to my family and consider it maybe.

"THE COURT: Mr. [Prosecutor], can you make any commitment to that?

"[PROSECUTOR]: The deal will be on the table unless circumstances change. That could happen tomorrow at the witness management, but unless anything changes, the two years is on the table.

"THE COURT: So we'll see you back on Monday."

At the May 7, 2021, witness management hearing, M.C. and D.A., the People's only civilian witnesses, appeared in court. They were both ordered to return to court on May 13, 2021, to testify at trial.

On May 10, 2021, the matter was on for jury trial in front of the Honorable Colette M. Humphrey. Appellant immediately requested a *Marsden*[2] hearing. At the hearing, he began by alleging Rogers was withholding "pertinent information," including part of the "investigator's report," which appellant claimed contained statements from "witnesses saying that they were lying and that they were refusing to testify." Appellant then claimed his primary complaint was that Rogers did not explain what a witness management hearing was to him, and as a result, he believed the People's two-year plea offer from May 6, 2021, would still be open. The court stated that it was "told" that the offer would remain open "if there [were] no changed circumstances, and the changed circumstance is they found the witness that they needed." Appellant responded that if he had known "the definition of witness management and definition of what the circumstances changed," he would have accepted the two-year offer. He specified that if counsel had told him "if you do [not] take the deal today, and the witnesses show up tomorrow, you're not going to [get] the two years, I would have taken the deal." He

---

**2**     *People v. Marsden* (1970) 2 Cal.3d 118.

claimed he was still willing to accept the two-year deal, but the court explained the People were no longer making such an offer.

The court then asked to hear from Rogers. He explained that the People initially offered a four-year sentence if appellant pled to a strike offense, or a six-year sentence if appellant pled to a non-strike offense. On May 4, 2021, after further negotiation, the People offered three years, and appellant countered with two years. The People indicated they were willing to accept the counteroffer, but Rogers then learned of appellant's newly filed vehicle theft case and wanted to make sure all of appellant's pending cases would be included in any plea agreement. On May 5, 2021, he spoke with the assigned prosecutor, who stated the vehicle theft case would be included in the deal. However, when he spoke with appellant that day, appellant insisted he would only resolve the case for 16 months. On May 6, 2021, appellant's position had not changed, so no disposition was reached. Rogers stated he explained to appellant he could be present on May 7, 2021, but all that would happen is if the People's witnesses came to court, the court would order them to return to appear at trial.

The court asked for clarification on the People's purported agreement to leave the two-year offer open until May 10, 2021. With appellant's consent, the court invited the prosecutor to join the *Marsden* hearing. The prosecutor explained that on May 6, 2021, the People made a two-year offer, and appellant stated he wanted time to consider it. The prosecutor confirmed the offer was to remain open unless there was a change in circumstances, such as a witness appearing at the witness management hearing.

After the prosecutor explained the terms of the offer, the following exchange occurred on the record:

> "THE COURT: That's what [appellant is] trying to say, Mr. Rogers, is when [the People] said if circumstances change, the offer is no longer open, you didn't tell him that means if they find their witness, the[] deal is off the table.

6.

"MR ROGERS:  I thought it was implied.

"THE COURT:  That's what he's saying.  You're saying you never told him.

"MR. ROGERS:  I think I told him he had the right to be here, but all we are going to do is order people back.

"[APPELLANT]:  I had no idea what witness management was, that's why I spoke up.

"THE COURT:  I do think there's a conflict.  I think because you didn't tell him that if they find their witness, the deal is off the table, he lost the opportunity to take the deal on [May 6].  Because he didn't realize if the witness showed up, he wouldn't get the deal.  That's witness management.  That creates a conflict between the two of you.  Because he's saying what you did cost him that deal, because it's no longer on the table.

"[APPELLANT]:  Also, I asked Mr. Rogers if he could relay that message to the D.A. that he didn't explain to —

"THE COURT:  That doesn't really matter at this point.  He doesn't have to relay anything to the D.A. and it's not their obligation to be concerned with what he tells you.  But you still want me to fire him because he didn't tell you you were going to lose the deal?

"[APPELLANT]:  Yes, ma'am.

"THE COURT:  I think he's correct, now that he found out the deal was on the table [on May 6], and he was never told that witness management means if they find the witness, there's no longer a deal.  That does create a conflict, Mr. Rogers."

The court relieved Rogers as appointed counsel on all of appellant's cases.  New counsel was appointed, but the parties were unable to reach a plea agreement, and the instant matter proceeded to trial.  Subsequent negotiations are not set forth in the record in detail, but it appears the People never reoffered the two-year deal appellant rejected on May 6, 2021.

7.

Following trial, the jury found appellant guilty of counts 2 through 7, but not guilty of count 1 and count 8. In a bifurcated proceeding, the trial court found appellant suffered one prior conviction that constitutes a strike prior conviction and a prior serious felony conviction.[3] At sentencing, the trial court granted appellant's motion to strike the prior serious felony allegation and granted his *Romero*[4] motion as to count 6 only. The trial court sentenced appellant to seven years four months in state prison and granted the People's motions to dismiss appellant's two remaining cases.

## DISCUSSION

**Appellant Does Not Establish Ineffective Assistance of Counsel.**

Appellant contends Rogers was ineffective for failing to inform him on May 6, 2021, that the People's two-year offer "could or most likely would" be withdrawn at the witness management hearing the following day. He claims he erroneously believed the offer would be available when the matter was next set for trial on May 10, 2021, and that he "had more time to make his decision." He argues that because of his counsel's deficient performance, he lost out on the opportunity to accept the two-year offer, which he claims he would have accepted had he understood the likelihood it would be withdrawn. As a remedy, he seeks reinstatement of the People's two-year offer.

### 1. *Standard of Review.*

To prevail on an ineffective assistance of counsel claim, the claimant must establish counsel's performance fell below an objective standard of reasonableness, and that prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) The two-part test set forth in *Strickland* is "applicable to ineffective-

---

[3] Prior to trial, the People conceded appellant had only suffered one prior strike conviction, and the trial court struck any reference to the second prior strike allegation from the amended information.

[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

8.

assistance claims arising out of the plea process." (*Hill v. Lockhart* (1985) 474 U.S. 52, 57.)

"[W]e undertake an independent review of the record [citation] to determine whether petitioner has established by a preponderance of substantial, credible evidence [citation] that his counsel's performance was deficient and, if so, that petitioner suffered prejudice." (*In re Alvernaz* (1992) 2 Cal.4th 924, 944–945 (*Alvernaz*).)

We need not address whether Rogers provided deficient representation because we conclude petitioner has failed to meet his burden of establishing prejudice. The United States Supreme Court has made clear that a reviewing court need not address both components of an ineffective assistance of counsel claim if one is dispositive. (*Strickland*, *supra*, 466 U.S. at p. 697.) As we explain below, appellant fails to establish a reasonable probability that, had Rogers told him the People were likely to withdraw their two-year offer if their witnesses appeared at the witness management hearing, he would have accepted it before it was withdrawn.

### 2. *Appellant Fails to Meet his Burden of Establishing Prejudice.*

#### A. **Applicable legal standards.**

A defendant claiming ineffective assistance of counsel must show "counsel's deficient performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*Alvernaz*, *supra*, 2 Cal.4th at pp. 936–937.) In the context of the instant case, where appellant claims counsel's deficient representation caused him to reject a proffered plea bargain, appellant "must prove there is a reasonable probability that, but for counsel's deficient performance," he would have accepted the People's offer. (*Id.* at p. 937.)

"In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually

9.

and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain." (*Alvernaz*, *supra*, 2 Cal.4th at p. 938.)

### B. Analysis.

Appellant relies heavily on *Lafler v. Cooper* (2012) 566 U.S. 156 (*Lafler*). There, the United States Supreme Court held the claimant received ineffective assistance of counsel based on his attorney's erroneous advice not to accept a plea offer in a murder case. (*Id.* at p. 174.) In concluding the claimant had met his burden of establishing prejudice, the court noted he had expressed a willingness to the court to accept the plea offer before receiving erroneous advice from his attorney. (*Id.* at p. 161.)

*Lafler* does not assist appellant. Here, unlike the claimant in *Lafler*, appellant repeatedly expressed an *unwillingness* to accept the plea offer. Appellant rejected the offer on May 5, 2021, telling Rogers he would only accept a sentence of 16 months. On May 6, 2021, he again rejected the People's two-year offer, personally informing the court he would "take the counteroffer [of] 16 months [with] a strike," or "two years without the strike." When he rejected the People's two-year offer on May 5 and May 6, 2021, the prosecutor had not yet represented that the offer would remain open unless "circumstances change." In other words, appellant twice rejected the People's two-year offer without any indication it would remain open on a future date. Therefore, the record overwhelmingly demonstrates appellant was never willing to accept the People's two-year offer. Thus, *Lafler* is distinguishable and does not dictate that we remand this matter.

The record also establishes appellant was willing to accept the risk that the offer might be withdrawn. After appellant informed the court that he was rejecting the

People's two-year offer, he asked if it would "still [be] on the table" on May 10, 2021. In response, the prosecutor stated the offer would "be on the table unless circumstances change." The prosecutor then specified that there could be a change in circumstances "tomorrow at the witness management [hearing]." These statements by the prosecutor made clear to appellant that the People might withdraw the offer before May 10, 2021. Despite this, appellant did not change his mind and accept the two-year offer before the May 6, 2021 hearing concluded. Instead, he took the chance that the offer might be withdrawn before he returned to court on May 10, 2021. His willingness to accept this risk conclusively shows there is no reasonable probability he would have accepted the People's two-year offer even if he had received competent advice.

In reaching our conclusion, we find it significant that appellant was personally involved in his case, and based on his comments on the record, he appears to be a competent litigant. He did not rely solely on counsel to negotiate with the People. He personally engaged in the plea bargaining process, expressing counter offers on the record and asking questions about the proceedings. Accordingly, we do not doubt appellant understood the prosecutor's statement that the two-year offer might be withdrawn, and that he was aware he was taking a risk by not accepting the People's two-year offer on May 6, 2021.

Even assuming we found appellant's claim he would have accepted the People's two-year offer to be credible, the only evidence he would have done so are his self-serving, uncorroborated statements, made after the offer was withdrawn. As our high court explained in *Alvernaz*: "[A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*Alvernaz*, *supra*, 2 Cal.4th at p. 938.) Accordingly, appellant's assertions he would have

11.

accepted the People's two-year offer but for the erroneous advice of counsel are legally insufficient to establish prejudice.

We recognize appellant made statements he would have accepted the People's two-year offer prior to his "trial, conviction, and sentence." (*Alvernaz*, *supra*, 2 Cal.4th at p. 938.) However, we conclude *Alvernaz* is still applicable. Just as a defendant assumes the risk of an adverse result by rejecting a pretrial plea offer and going to trial, appellant assumed the risk of an adverse result by deciding not to accept the People's offer knowing that circumstances might change, and the offer might not be available in the future. Thus, under *Alvernaz*, appellant cannot establish prejudice based solely on his statements made after he lost the gamble of not accepting the plea offer that he would have accepted it had he been properly advised.

Regardless of *Alvernaz*'s corroboration requirement, we reject appellant's claim he would have accepted the People's two-year offer as not credible. In the analogous context of a claim involving the acceptance of a plea offer due to counsel's deficient performance, the United States Supreme Court cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States* (2017) 137 S.Ct. 1958, 1967.) Here, appellant's contemporaneous conduct, including his repeated rejection of the two-year offer without any indication it would remain open, amply demonstrates he would not have accepted the offer regardless of the advice of counsel. His subsequent claim he would have accepted the offer, made after the People "found the witness that they needed" to prove the charges against him, was self-serving and lacks credibility.

Based on the record before this court, appellant has not demonstrated a reasonable probability that, but for Rogers's purported failure to explain that the People's two-year offer might be withdrawn if the People's witnesses appear at the witness management

hearing, he would have accepted the offer.  Therefore, our independent review reveals appellant has not met his burden under *Strickland* of establishing prejudice, and his ineffective assistance of counsel claim lacks merit.

## **DISPOSITION**

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


MEEHAN, J.

13.